IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MATTHEW LAWRENCE GILLESPIE, TDCJ # 02298324 | § § § | |
| V. | § § § § | W-19-CV-301-ADA |
| SHERIFF SCOTT WILLIAMS, SGT. FNU RAMOS, and NURSE JENNIFER FERGUSON. | § § § | |

**ORDER**

Before the Court are Plaintiff Matthew Lawrence Gillespie's complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 1), Defendants Sheriff Scott Williams, Sgt. FNU Ramos, and Nurse Jennifer Ferguson's Motions for Summary Judgment (ECF Nos. 11, 13) and Plaintiff's Response (ECF No. 18). Plaintiff is proceeding pro se and *in forma pauperis*. Upon careful consideration, the Court grants Defendants' motions and dismisses Plaintiff's claims with prejudice.

**I. Background**

Plaintiff is currently incarcerated in the Holliday Unit at the Texas Department of Criminal Justice—Correctional Institutions Division. However, Plaintiff's complaint relates to events that occurred while he was a pretrial detainee at Coryell County Jail (CCJ) in 2019. Plaintiff alleges that when he was arrested on December 30, 2018, he had a new gunshot wound to his hand which an orthopedic surgeon had already scheduled for skin-graft surgery. However, he alleges CCJ medical staff cancelled his surgery and then were

1

deliberately indifferent to his serious medical needs in violation of his Eighth and Fourteenth Amendments rights. Plaintiff also alleges that on January 23, 2019, Defendants Williams and Ramos threatened to deny Plaintiff future medical treatment if he continued to make complaints about medical care he was receiving at CCJ. Plaintiff alleges that his hand is now permanently disfigured and scarred, and that the delay in healing his wound resulted in prolonged pain and suffering. He names Sherriff Scott Williams, Sergeant Ramos, and Nurse Jennifer Ferguson in their individual and official capacities, and seeks $25,000 in punitive damages from each defendant, as well as a declaratory order from the Court that Defendants' actions were unconstitutional. (ECF No. 1.)

Defendants filed motions for summary judgment, arguing that Plaintiff's hand wound had received appropriate medical care and that there was no evidence they had retaliated against him. Defendants Williams and Ramos also argued they were entitled to qualified immunity. (ECF Nos. 11, 13.) The summary judgment record[1] shows the following.

Plaintiff sustained a gunshot wound to his left hand on December 28, 2018. Plaintiff initially presented at the Baylor Scott and White Health Emergency Department (ED) under a false name where his wounded hand was washed, closed, and splintered. (ECF

---

[1] Plaintiff's verified complaint is competent summary judgment evidence. *See Taylor v. Stevens*, No. 17-10253, 2019 WL 6975029, at *5 (5th Cir. Dec. 20, 2019)(verified pleadings are competent evidence at summary judgment); *see also Lodge Music Hall, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) (verified pleadings are competent summary judgment evidence when they are based on personal knowledge, set forth admissible facts, and show affiant is competent to testify).

2

No. 11-2 at 24.) Plaintiff was told to come back for a skin graft within 72 hours; however, Plaintiff was arrested on December 31, 2018. (ECF No. 13-2 at 9.) Plaintiff immediately told CCJ staff that he had skin-graft surgery scheduled for January 1, 2019 because he was in danger of losing his fingers. (ECF No. 1.) Defendant Ferguson noted that, at the time of booking, Plaintiff's "last three fingers were just raw meat" with stitches. (ECF No. 11-2 at 1.) That day, Ferguson spent over an hour on the phone trying to confirm Plaintiff's surgical appointment, which was complicated by Plaintiff's use of a false name in the ED. She was told someone would call her back, and on January 2, 2019, Julie from Dr. Kallina's office—the surgeon Plaintiff was seen by in the ED—called and notified Ferguson that Plaintiff would no longer need surgery, and that they could schedule a follow-up appointment if necessary. (*Id.*)

Plaintiff was seen by a CCJ physician on January 8, 2019. The physician noted "open, weeping areas" on his left hand, that some sutures were remaining, and that Plaintiff had stopped his initial antibiotic, Keflex, and started a new one, Bactrim. The physician also noted that Plaintiff had tenderness to all areas during wound care, that Plaintiff would place his other fingers over the wounded area while it was unwrapped, and that Plaintiff wanted skin grafts, but the surgeon had stated he would see Plaintiff when he was out of jail. (ECF No. 11-2 at 3.) Defendant Ferguson stated that when Plaintiff learned of her conversation with Julie from Dr. Kallina's office, he became very upset and insisted on a follow-up appointment; Defendant Ferguson called and scheduled a follow-up appointment with Dr. Kallina on February 26, 2019. (ECF No. 11-1 at 2.)

Over the next three weeks, Defendant Ferguson changed and dressed Plaintiff's wounds five days a week. In her patient progress notes, she notes that Plaintiff was consistently critical of her medical treatment and threated to sue her and others for medical negligence. Ferguson observed that Plaintiff's wounds were steadily improving and that Plaintiff would occasionally take off his bandages himself.

Defendant Ferguson finished treating Plaintiff's wounds on January 29, 2019; she advised Plaintiff to keep the area dry, and to continue to move his fingers every day. She had two follow-ups with Plaintiff between then and February 26; each time she noted that the wound looked good and there were no signs of infection. (ECF NO. 11-2 at 3-8.)

Starting on January 9, Plaintiff began submitting grievances over his medical care. He first complained that CCJ did not want to pay for him to see a specialist, and that he had lost all feeling in his pinkie finger. On January 11, he wrote a letter "to whom it may concern" and again complained about missing his skin-graft surgery. (ECF No. 1 at 5.) On January 18, Plaintiff complained that Defendant Ferguson had failed to wrap his hand properly, leaving his wound exposed and that she would not fix it. In response, Defendant Ferguson stated that Plaintiff left her office with the wrap intact, but would sometimes take it off on his own. (*Id.* at 19.)

On January 20, Plaintiff complained that he had missed his morning antibiotic medication because Defendant Ferguson had failed to put his antibiotics in the medical cart. She responded that he should have received his meds (ECF No. 11-2 at 12), and then wrote a separate letter to Sgt. Arrington asking why Plaintiff had not received his antibiotic medication when it was available to be dispensed and noting that medications

were very important and critical (ECF No. 13-4 at 7). In a separate grievance also dated January 20, Plaintiff complained about his medical treatment, his missed surgery, and that he had lost feeling in two fingers. (ECF No. 11-2 at 13.)

On January 21, Plaintiff complained that Defendant Ferguson told him she would give him something for his dry hands, but that she had forgotten. (*Id.* at 14.) In a separate grievance, he complained that Defendant Ferguson had retaliated against him by charging him for his medical treatment, which he said she could not do because it was a pre-existing condition. Ferguson responded that there was no exclusion for pre-existing conditions. (*Id.* at 15.) Defendants submitted the CCJ's Inmate Rules, which states that inmates will be charged for medical care, and lists the types of health services and their associated fees. (ECF No. 13-2 at 23-24.)

On January 22, Plaintiff complained that while Defendant Ferguson was changing his dressing with Officer Brown in the room, Ferguson told Plaintiff she would stop giving him proper medical care if he did not stop complaining. Officer Brown responded to the complaint, stating that Plaintiff was "acting rude" toward Defendant Ferguson and that in response, Ferguson warned Plaintiff she would stop wrapping his hand if Plaintiff continued to be disrespectful towards her. (ECF No. 18.)

On February 26, Plaintiff had his follow-up appointment with Dr. Kallina. An x-ray of Plaintiff's left hand showed fractures of his left long and ring fingers, along with "perlosteal reaction and/or healing visualized" making the fractures subacute to chronic. (ECF No. 11-2 at 22.) Dr. Kallina examined Plaintiff and noted that Plaintiff had full active range of motion of all his digits, wrists and elbows, except his left fingers. Dr. Kallina

5

observed that the wounds on Plaintiff's long and ring finger were closed, while the wound on his small finger was closed but continued to have a scab. He further observed that Plaintiff had "brisk capillary refill" in his fingertips and sensation to light touch in all fingertips. The doctor concluded that there was no further workup necessary, no signs of infection, and that "everything appears to be well healed with continued ongoing healing of the small finger." He advised Plaintiff to continue to work on his range of motion with a squeeze ball, provided Plaintiff with range-of-motion exercises, and stated Plaintiff could return to "unrestricted use of the left hand." (ECF No. 11-2 at 18-25.)

Defendant Williams attested that the only personal interaction he had with Plaintiff relating to his medical care occurred on January 23, during one of Plaintiff's dressing changes. Defendant Ferguson had previously complained to Defendant Williams about Plaintiff's abusive behavior during his bandage changes, stating that Plaintiff "insulted, berated, and cussed at her during the interactions." Defendants Williams and Ramos attended this dressing change and explained to Plaintiff that Defendant Ferguson was doing her job, that her medical treatment was based on a physician's orders, and that Plaintiff should treat Defendant Ferguson with the same amount of respect he treated Williams. Defendant Williams attested that he did not threaten to withhold medical care to Plaintiff, but he did warn Plaintiff that he would be written up for disciplinary issues if he continued to disrespect Ferguson. In response, Plaintiff began crying and apologized to Williams and Ferguson, saying being in jail was hard and that he missed his children and his significant other. (ECF No. 13-2 at 5-6.)

Defendant Ramos attested that he was in the room when Defendant Williams spoke to Plaintiff about his treatment of Defendant Ferguson, and concurred with Williams's description of what transpired. Defendant Ramos also attested that he is the officer in charge of work assignments at CCJ and that Plaintiff had submitted two work requests to be assigned to work duty. His first request was denied by Ferguson for medical reasons related to his injured hand. After Ferguson medically-cleared Plaintiff, he was assigned to kitchen duty, which included activities like sweeping and mopping. Plaintiff was able to perform these activities without any problems. (ECF No. 13-2 at 1-4.)

In response to Defendants' motions, Plaintiff argues that Dr. Kallina told him Defendant Ferguson canceled his skin graft surgery; he questions why it took her twenty-four days for her to request his medical records; he states that Dr. Kallina informed him the degenerative changes in his left little finger were because he had not had a skin graft; and argues that Officer Brown's response to his grievance that Defendant Ferguson threatened him proves that she retaliated against him. (ECF No. 18.)

## **II. Analysis**

*Summary Judgment*

On a motion for summary judgment, a court will render judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere

7

allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

In deciding whether to grant summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in their favor. *See James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990). "When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

*Qualified Immunity*

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as

8

his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253. The plaintiff must therefore present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In considering a qualified immunity defense, the Court views the evidence in the light most favorable to the non-movant and draw all inferences in the non-movant's favor, *see Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

*Deliberate Indifference*

The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (*citing Hare*, 74 F.3d at 634-44). A pretrial detainee's Fourteenth Amendment rights include the right to medical care. *See Sanchez v. Young Cnty., Tex.*, 866 F.3d 274, 279

9

(5th Cir. 2017). Because the standard is essentially the same for both pretrial detainees and postconviction prisoners, cases applying the Eighth Amendment remain relevant to the Court's analysis.

To establish deliberate indifference regarding his medical care, Plaintiff must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)). Allegations of unsuccessful medical treatment, mere negligence, neglect, or medical malpractice do not give rise to a § 1983 action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Pretrial detention deliberate-indifference claims are analyzed based on whether they concern a "condition of confinement" or an "episodic act of omission." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). Plaintiff's claim is based on an episodic act or omission; accordingly, to succeed on this claim, Plaintiff must show that Defendants acted with subjective deliberate indifference to his constitutional rights, i.e. "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Id.* (citation and quotation omitted). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted).

Plaintiff alleges that Defendant Ferguson was deliberately indifferent to his serious medical needs when she cancelled his skin-graft surgery and then provided him with medically negligent treatment that resulted in pain and permanent disfigurement. The summary judgment record shows that Ferguson attempted to confirm Plaintiff's surgical appointment, but was unable to because Plaintiff had used a false name in the ED. A couple days later, Dr. Kallina's assistant contacted Ferguson and informed her the surgery was no longer necessary. Defendant Ferguson treated Plaintiff with antibiotics and changed his wound dressing five days a week for three weeks until the wound had healed. Although Plaintiff did not receive his antibiotics one day, that was apparently due to a staffing problem, and Defendant Ferguson's neglect. Plaintiff never requested any pain medication, and none of his grievances complain of him being in pain. Finally, upon Plaintiff's follow-up appointment with Dr. Kallina, the doctor informed Plaintiff that his wound had healed and provided Plaintiff with some exercises to help improve his range-of-motion. Unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not give rise to a cause of action. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Accordingly, there is nothing to support Plaintiff's claims that Defendants were deliberately indifferent to his serious medical needs. At most, Plaintiff has established a disagreement with his treatment which does not amount to a constitutional violation. Defendants are therefore entitled to summary judgment on this claim.

*Retaliation*

"Under the First Amendment, a prison official may not harass or retaliate against an inmate 'for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019). The elements of a retaliation claim are "(1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). The plaintiff must establish that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory statements that retaliation occurred are not sufficient; rather, "the inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (citation omitted).

Plaintiff alleges two acts of retaliation. First, he claims that after he filed two grievances against her, Defendant Ferguson charged him for his medical are. Second, he claims that Nurse Ferguson, Defendant Williams, and Defendant Ramos threatened to withhold his medical treatment unless he stopped filing grievances about Ferguson's medical care.

It is clearly established that a prison official "may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). The record shows that Plaintiff made many complaints regarding Defendant Ferguson's medical care, and Officer Brown's grievance

response does support Plaintiff's claim that Nurse Ferguson threatened to withhold medical care. However, the threat of an adverse action does not in itself support a claim for retaliation. Indeed, the record shows that despite Plaintiff's complaints and her threat to withhold treatment, Ferguson continued to provide Plaintiff medical care until his wounds were healed, and Defendant Ramos assigned him to work duty once Ferguson medically cleared Plaintiff to work. Plaintiff may have felt chastened by the conversation he had with Defendants Williams and Ramos regarding his treatment of Ferguson, but there is no evidence that any defendant actually withheld medical care from Plaintiff. *Cf. Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (verbal harassment, without more, does not amount to a constitutional violation).

Plaintiff's claim that Defendant Ferguson retaliated against him when she charged him for his medical care also fails because detainees are not entitled to free medical care. *Cf. Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014) (inmates are not entitled to medical care and their displeasure at having to pay a co-payment does not state a constitutional claim) (citations and quotations omitted). CCJ has a policy of charging inmates for medical services, which is exactly what Ferguson did. Plaintiff suffered no adverse action when he complained of his medical treatment; accordingly, Defendants are entitled to summary judgment on this claim.

*Municipal Liability*

Plaintiff's complaint names Defendants in both their individual and official capacities. A suit against municipal officials in their official capacity is no different from a suit against the municipality itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58,

71 (1989). A municipality may be liable under 42 U.S.C. § 1983 for the violation of constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To state a claim for municipal liability under § 1983, a plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019) (citation omitted). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citation omitted).

In his complaint, Plaintiff alleged only that it is the "unofficial" policy of Coryell County to treat inmates with deliberate indifference. (ECF No. 1 at 8.) Defendants argue in their summary judgment motions that there is no unconstitutional policy that supports Plaintiff's official-capacity claims. In response, Plaintiff does not provide any evidence whatsoever supporting his official-capacity claims; indeed, he does not mention this claim at all. As the non-moving party, Plaintiff must provide some evidentiary support for his allegations to survive summary judgment. Because Plaintiff failed to provide any evidence for this claim or even address the issue of municipal liability in his response, the Court grants summary judgment to Defendants on this claim as well. *See Celotex Corp.*, 477 U.S. at 324 (once moving party submits properly supported summary judgment motion, non-moving party must "go beyond the pleadings . . . and designate 'specific facts showing that there is a genuine issue for trial'"); *Boudreaux v. Swift Transp. Co.*, 402

F.3d 536, 544 (5th Cir. 2005) (absence of evidence for non-movant's claim is proper basis for granting summary judgment).

## III. Conclusion

It is therefore **ORDERED** that Defendant Defendants Motions for Summary Judgment (ECF Nos. 11, 13) are **GRANTED**.

**SIGNED** on February 14, 2020

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE